UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| DIANE OLVERA, ) | |
| ) | |
| Plaintiff, ) | 3:08-cv-00355-LRH-VPC |
| ) | |
| v. ) | |
| ) | |
| SIERRA NEVADA COLLEGE; SCOTT ) | ORDER |
| GOODIN; LARRY LARGE; RAY RYAN; ) | |
| and DAVID WEBB, ) | |
| ) | |
| Defendants. ) | |

 Before the court is Defendants Sierra Nevada College, Scott Goodin, Larry Large, Ray Ryan, and David Webb's (collectively "Defendants") Motion for Summary Judgment (#37[1]). Plaintiff Diane Olvera has filed an opposition (#41) to which Defendants replied (#42). Defendants have also filed a motion to supplement the exhibits submitted in support of the motion for summary judgment (#44). In response, Plaintiff filed a "Motion to Strike Supplemental Filing or, in the alternative, Motion to Submit Supplemental Evidence" (#45) to which Defendants filed a reply and opposition (#46).

 As a preliminary matter, the court will deny Defendants' Motion to Supplement (#44). In the motion, Defendants seek to introduce evidence of harassing conduct Plaintiff engaged in after filing the complaint in this matter. On the whole, this evidence is not relevant to the dispute now before the court and does not assist the court in its consideration of the motion for summary judgment. Accordingly, the court will deny the motion.

---

[1] Refers to the court's docket entry number.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

```
DIANE OLVERA,                        )
                                     )
             Plaintiff,              )   3:08-cv-00355-LRH-VPC
                                     )
v.                                   )
                                     )
SIERRA NEVADA COLLEGE; SCOTT         )   ORDER
GOODIN; LARRY LARGE; RAY RYAN;       )
and DAVID WEBB,                      )
                                     )
             Defendants.             )
```

 Before the court is Defendants Sierra Nevada College, Scott Goodin, Larry Large, Ray Ryan, and David Webb's (collectively "Defendants") Motion for Summary Judgment (#37[1]). Plaintiff Diane Olvera has filed an opposition (#41) to which Defendants replied (#42). Defendants have also filed a motion to supplement the exhibits submitted in support of the motion for summary judgment (#44). In response, Plaintiff filed a "Motion to Strike Supplemental Filing or, in the alternative, Motion to Submit Supplemental Evidence" (#45) to which Defendants filed a reply and opposition (#46).

 As a preliminary matter, the court will deny Defendants' Motion to Supplement (#44). In the motion, Defendants seek to introduce evidence of harassing conduct Plaintiff engaged in after filing the complaint in this matter. On the whole, this evidence is not relevant to the dispute now before the court and does not assist the court in its consideration of the motion for summary judgment. Accordingly, the court will deny the motion.

---

[1] Refers to the court's docket entry number.

I.   **Facts and Procedural History**

This is an employment discrimination dispute arising out of Plaintiff's work as an administrative assistant for Sierra Nevada College. In June of 2007, the college hired Defendant Scott Goodin as its Chief Financial Officer. Shortly after, Goodin hired Plaintiff as his administrative assistant. Plaintiff also served as an administrative assistant to the college's Provost, Defendant Ray Ryan, the college's President, Defendant Larry Large, and the college's Human Resources Director, Defendant David Webb.

Plaintiff's employment with the college was relatively short-lived, and on December 4, 2007, the college terminated her. The parties dispute what led to Plaintiff's termination. Defendants allege that in late November or early December, 2007, they decided to terminate Plaintiff because of poor work performance.[2] However, in November of 2007, before Defendants decided to terminate her, Plaintiff submitted a medical leave request form informing Defendants of an upcoming medical procedure. Because of the procedure, Defendants decided to delay Plaintiff's termination.

Plaintiff denies ever under-performing at work and counters that Defendants terminated her (1) because of her gender and (2) because she complained about discriminatory treatment. Plaintiff notes that in October of 2007, the college hired Theresa DiMaggio to serve as Executive Assistant to the President. Plaintiff states that shortly after starting work, DiMaggio began dating Plaintiff's supervisor, Goodin. Thereafter, Plaintiff alleges she suffered discriminatory treatment because DiMaggio had a sexual relationship with Goodin, and Plaintiff did not.

Beyond general allegations that DiMaggio received favorable treatment, Plaintiff largely fails to identify particular instances of harassing conduct or evidence suggesting that Defendants' possessed gender-based animus. However, she does note that, in response to hearing about Plaintiff's upcoming medical procedure, which involved Plaintiff's breasts, Goodin stated,

---

[2]Defendants also fault Plaintiff for (1) dressing provocatively, (2) injecting sexual innuendo and humor into conversations, and (3) taking an interest in on-campus events. Plaintiff disputes each of these allegations. Regardless, beyond Plaintiff's involvement in on-campus events negatively affecting her work performance, Defendants do not appear to contend that these issues caused Plaintiff's termination.

1  "[A]though [your surgeon is] a good surgeon, if he cut[s] too much, your boobs [are] big enough
2  [that you will] have plenty left over." (Pl.'s Opp. (#41), Ex. 1 at 7, ¶ 11.) In addition, two weeks
3  before the procedure, Goodin told her she might die.
4        On December 3, 2007, Ryan and Goodin state that they met with Plaintiff to discuss her
5  work performance. After the meeting, Plaintiff immediately went to Webb, the Human
6  Resources Director, and complained about discriminatory treatment and a hostile working
7  environment. Webb states that when Plaintiff complained, she was visibly upset and did not
8  speak to him for more than ten seconds. Plaintiff counters that she never attended such a
9  meeting, but she admits that on December 3, 2007, she complained about her discriminatory
10 treatment and work environment.
11       The following day, Larry, Webb, and Ryan met to discuss Plaintiff's employment. At the
12 meeting, Ryan stated that Plaintiff had given him a photograph of DiMaggio's car parked in front
13 of Goodin's house as evidence of their "affair." Because of security concerns arising out of this
14 incident and other incidents where Plaintiff allegedly stated that she had guns at her house and
15 knew how to use them, Defendants decided to immediately inform Plaintiff of her termination.
16       Plaintiff counters that Defendants terminated her on December 4, 2007, because of her
17 complaints about the relationship between Goodin and DiMaggio. She alleges that when asked,
18 Webb confirmed that she was terminated for making the complaints. Webb denies ever making
19 such a statement.
20 **II.    Legal Standard**
21       Summary judgment is appropriate only when "the pleadings, depositions, answers to
22 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
23 genuine issue as to any material fact and that the moving party is entitled to judgment as a matter
24 of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence,
25 together with all inferences that can reasonably be drawn therefrom, must be read in the light
26 most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*
27 *Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148,
28 1154 (9th Cir. 2001).

1    The moving party bears the burden of informing the court of the basis for its motion,
2  along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v.*
3  *Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the
4  moving party must make a showing that is "sufficient for the court to hold that no reasonable
5  trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d
6  254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D.
7  Cal. 2001).
8    To successfully rebut a motion for summary judgment, the non-moving party must point
9  to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.*
10 *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might
11 affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477
12 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue,
13 summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A
14 dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable
15 jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere
16 existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to
17 establish a genuine dispute; there must be evidence on which the jury could reasonably find for
18 the plaintiff. *See id.* at 252.

19 **III.   Discussion**

20    Plaintiff asserts the following claims for relief: (1) discrimination; (2) retaliation; (3)
21 intentional infliction of emotional distress; and (4) a violation of the Employment Retirement
22 Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1462. Defendants seek summary judgment
23 on each of these claims.

24    **A.    Discrimination**

25    Plaintiff alleges Defendants discriminated against her in violation of Title VII of the Civil
26 Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and the Fourteenth Amendment of the United
27 States Constitution.
28    As a preliminary matter, the court first finds that Plaintiff's claim based on the Fourteenth

Amendment must fail. To establish liability under 42 U.S.C. § 1983, a plaintiff must demonstrate the following: (1) the defendant acted under color of state law; and (2) the defendant deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Learned v. Bellevue*, 860 F.2d 928, 933 (9th Cir. 1988) (citing 42 U.S.C. § 1983). Sierra Nevada College is a private institution, and Plaintiff has failed to present any evidence indicating that Defendants otherwise acted under color of state law. Accordingly, summary judgment on this claim is appropriate.

Title VII makes it an unlawful employment practice to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[3] 42 U.S.C. § 2000e-2. To prevail, the plaintiff must establish a prima facie case of discrimination by presenting evidence that "gives rise to an inference of unlawful discrimination." *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff can establish a discrimination claim through either the burden shifting framework set forth in *McDonnell Douglas* or with direct or circumstantial evidence of discriminatory intent. *See Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007) ("When responding to a summary judgment motion . . . [the plaintiff] may proceed using the *McDonnell

---

[3] The court notes that Plaintiff has failed to present evidence indicating that prior to filing suit, she filed a claim with the Nevada Equal Rights Commission or the Equal Employment Opportunity Commission ("EEOC"). "A person seeking relief under Title VII must first file a charge with the EEOC within 180 days of the alleged unlawful employment practice, or, if . . . the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008) (citing 42 U.S.C. § 2000e-5(d)(1)).

The Supreme Court has held that while the timely pursuit of administrative remedies is a condition precedent to a Title VII Claim, the requirement is not jurisdictional. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Thus, like the statute of limitations, the requirement is subject to waiver, estoppel, and equitable tolling. *Zipes*, 455 U.S. at 393; *see also Surrell*, 518 F.3d at 1104.

Here, although Plaintiff appears to have failed to file a claim with NERC or the EEOC, Defendants do not argue that Plaintiff's claims are barred for this reason. As such, Defendants have effectively waived this argument. *See Temengil v. Trust Territory of Pac. Islands*, 881 F.2d 647, 654 (9th Cir. 1989) (applying *Zipes* to situation where the plaintiff completely failed to file any claim with the EEOC).

1  *Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence
2  demonstrating that a discriminatory reason more likely than not motivated [the employer].")
3  (citation omitted) (alterations in original).  Because the parties have proceeded under the
4  *McDonnell Douglas* framework the court will do so here.

5  Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of
6  establishing a prima facie case of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  In
7  particular, the plaintiff must show that (1) she belongs to a protected class, (2) she was qualified
8  for her position, (3) she suffered an adverse employment action, and (4) similarly situated
9  individuals outside of her protected class were treated more favorably.  *Davis v. Team Elec. Co.*,
10 520 F.3d 1080, 1089 (9th Cir. 2008) (*citing Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126
11 (9th Cir. 2000)).   If the plaintiff succeeds in establishing a prima facie case, the burden shifts to
12 the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory
13 conduct.  *McDonnell Douglas*, 411 U.S. at 802.  If the defendant provides such a justification,
14 the burden shifts back to the plaintiff to show that the defendant's justification is a mere pretext
15 for discrimination.  *Id.* at 804.

16 In supporting her discrimination claim, Plaintiff relies on two theories of discrimination.
17 First, Plaintiff appears to assert the so-called "paramour" theory of discrimination.  Under this
18 theory, a plaintiff bases her discrimination claim on allegations of favoritism arising out of a
19 supervisor's relationship with a co-worker.  However, unless a plaintiff identifies employment
20 benefits or opportunities that she was entitled to but did not receive because of the relationship,
21 the plaintiff's claim fails.  *Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588, 590 (9th
22 Cir. 1992).   Here, Plaintiff has not identified the denial of any such benefits or opportunities.
23 Accordingly, to the extent Plaintiff bases her discrimination claim on the effects of DiMaggio
24 and Goodin's relationship, summary judgment is appropriate.

25 Plaintiff also alleges she was discriminated against because of her gender.  However,
26 Plaintiff has failed to cite any evidence suggesting that she was terminated because of her gender
27 or that Defendants treated similarly situated males more favorably.  Plaintiff's citation to *Equal*
28 *Employment Opportunity Commission v. National Education Association*, 422 F.3d 840 (9th Cir.

1  2005), and other cases is unavailing.  For example, in *National Education Association*, female
2  employees brought a claim for hostile work environment harassment alleging that the assistant
3  executive director of the National Education Association-Alaska frequently shouted at female
4  employees in a loud and hostile manner and was physically threatening to female employees.  *Id.*
5  at 842-844.  Although the conduct was not sex or gender-based, the court held, "[O]ffensive
6  conduct that is not facially sex-specific nonetheless may violate Title VII if there is sufficient
7  circumstantial evidence of qualitative and quantitative differences in the harassment suffered by
8  female and male employees." *Id.* at 842.  Thus, the court noted, regardless of whether harassing
9  conduct is sex or gender related, the ultimate question is whether the conduct affected women
10 more adversely than it affected men.  *Id.* at 845.

11       This case is distinguishable from *National Education Association*.  There, the plaintiffs
12 brought a claim for hostile work environment harassment.  Here, Plaintiff alleges a claim for
13 disparate treatment discrimination.[4]  Moreover, unlike in *National Education Association*,
14 Plaintiff has not cited to any evidence suggesting objective differences in Defendants' treatment
15 of male and female employees.  In fact, Plaintiff has failed to present any evidence of
16 Defendants' treatment of similarly situated male employees.  As such, to the extent Plaintiff
17 alleges gender-based discrimination, the court will grant summary judgment on Plaintiff's
18 discrimination claim.[5]

---

20  [4]To the extent Plaintiff believes she has stated a claim for hostile work environment harassment,
21  the court rejects such a claim.  Plaintiff has not identified harassing conduct sufficiently severe or
pervasive to alter the conditions of her employment.  *See Clark County Sch. Dist. v. Breeden*, 532 U.S.
22  268, 270-71 (2001); *see also Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir.
1992) ("A co-worker's romantic involvement with a supervisor does not by itself create a hostile work
23  environment.").
    Likewise, Plaintiff does not appear to state a claim for quid pro quo sexual harassment.  To
24  establish such a claim, Plaintiff must show that an individual "explicitly or implicitly conditioned a job, a
job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct." *Heyne*
25  *v. Caruso*, 69 F.3d 1475, 1478 (9th Cir. 1995) (citation omitted).  There is no evidence in the record
26  suggesting that Defendants asked Plaintiff to submit to sexual demands or conduct.

27    [5]The court further notes that Plaintiff has failed to demonstrate that Defendants' offered reasons
    for her termination are a mere pretext for discrimination.  When the defendant demonstrates a legitimate,
28  nondiscriminatory reason for its employment decision, the *McDonnell Douglas* presumption of

**B.     Retaliation**

Plaintiff alleges Defendants retaliated against her for complaining about her allegedly discriminatory treatment and hostile work environment. Under § 2000e-3(a), it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII ], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in an activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) *(citing Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for its decision. *Ray*, 217 F.3d at 1240. If the defendant demonstrates such a reason, the burden shifts back to the plaintiff to show that the defendant's reason was a mere pretext for a discriminatory motive. *Id.*

Although Defendants assume without admitting that Plaintiff can establish a prima facie case of retaliation, the court will address this aspect of the *McDonnell Douglas* analysis briefly. Viewing the evidence in the light most favorable to Plaintiff and resolving all factual disputes in

---

discrimination "simply drops out of the picture." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1994)). The ultimate burden rests on the plaintiff to demonstrate that the defendant's offered reasons are a pretext for the employer's true discriminatory motive. *Id*. at 890. A plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F. 3d 1080, 1093-94 (9th Cir. 2001) (*quoting Texas Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Plaintiff has failed to meet her burden here. No evidence before the court suggests that Defendants took the above-described actions because of Plaintiff's gender. While, as discussed below, Defendants' actions may give rise to a claim for retaliation, the evidence before the court does not support a gender-based discrimination claim. Accordingly, summary judgment with regard to Plaintiff's discrimination claim is appropriate.

1   her favor, the evidence suggests that Plaintiff was terminated a day after complaining that her
2   work environment was hostile and that she suffered discriminatory treatment because DiMaggio
3   had a sexual relationship with Goodin, and Plaintiff did not.  In light of the close temporal
4   proximity between Plaintiff's complaint and her termination as well as Plaintiff's evidence
5   suggesting that Webb confirmed that she was fired because of her complaint, the court finds that
6   issues of fact remain concerning whether Defendants terminated Plaintiff because she
7   complained about harassment and discrimination.
8        Regardless, Defendants argue they have demonstrated legitimate, nondiscriminatory
9   reasons for terminating Plaintiff.  For example, Defendants contend that they terminated Plaintiff
10  because of her poor work performance and because she engaged in bizarre and threatening
11  behavior.  Plaintiff counters that her work performance was never sub-par and that she did not
12  engage in inappropriate behavior.  Thus, Plaintiff contends the reasons now offered by
13  Defendants are a pretext for their true retaliatory motive.[6]
14       Plaintiff supports her arguments almost entirely through statements in her affidavit.
15  Defendants ask the court to reject Plaintiff's affidavit pursuant to the "sham affidavit rule."  "The
16  general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit
17  contradicting his prior deposition testimony."  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262,
18  266 (9th Cir. 1991) (citations omitted).
19       Here, Defendants have not identified any deposition statement or other sworn testimony
20  contrary to the statements in Plaintiff's affidavit.  Accordingly, the court finds that Plaintiff's
21  affidavit is not an attempt to create a "sham issue of fact."  *Id.* at 277.[7]
22       Because disputed issues of fact remain concerning Plaintiff's prima facie claim of
23  retaliation and the pretextual nature of Defendant's offered reasons for the decision to terminate

---

[6] While Plaintiff does not phrase her challenge in the specific terms used in the *McDonnell Douglas* framework, the court nonetheless finds that Plaintiff raises arguments and presents evidence addressing the pretextual nature of Defendants' asserted reasons for her termination.

[7] Defendants' contention that the allegations in Plaintiff's complaint are sufficient to invoke the sham affidavit rule is unsupported by legal authority.

1  Plaintiff, the court must deny summary judgment on Plaintiff's retaliation claim.

2  The court notes that its denial of summary judgment extends only to Sierra Nevada
3  College. As to the individual defendants, Title VII limits civil liability to the employer. *See*
4  *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587 (9th Cir. 1993) (citations omitted). Thus,
5  "individual defendants cannot be held liable for damages under Title VII . . . ." *Id.* (citation
6  omitted). To the extent Plaintiff's retaliation claim alleges retaliation by Defendants Goodin,
7  Large, Ryan, and Webb, the court will grant summary judgment.

8      **C.**    **Intentional Infliction of Emotional Distress**

9  To establish a claim for intentional infliction of emotional distress, the plaintiff must
10  demonstrate the following: (1) "extreme and outrageous conduct with either the intention of, or
11  reckless disregard for, causing emotional distress"; (2) severe or extreme emotional distress; and
12  (3) actual or proximate causation. *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981) (citation
13  omitted).

14  Extreme and outrageous conduct "is that which is 'outside all possible bounds of
15  decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency*
16  *Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citations omitted). This is not such a case. The court
17  finds no allegations in this case that amount to extreme and outrageous conduct, and Plaintiff has
18  pointed to no specific evidence to support such a claim. Thus, summary judgment on this claim
19  is appropriate.

20      **D.**    **ERISA**

21  Plaintiff alleges that, after her termination, Defendants failed to notify her of her right to
22  continued health coverage under the Consolidated Omnibus Budget Reconciliation Act
23  ("COBRA"), 29 U.S.C. §§ 1161-1169. COBRA requires administrators of covered group health
24  plans to notify terminated employees that they may continue their benefits after their employment
25  ends. 29 U.S.C. §§ 1161(a), 1163, 1166(a)(4).

26  Although § 1166(a)(4) does not specify the steps needed to notify plan participants of
27  their right to continued coverage, courts have generally held that a "good faith attempt to comply
28

1  with a reasonable interpretation of the statute is sufficient."[8] *Crotty v. Dakotacare Admin. Serv.*,
2  455 F.3d 828, 830 (8th Cir. 2006) (citation omitted); *see also Torres-Negron v. Merck & Co.*,
3  488 F.3d 34, 45 (1st Cir. 2007); *Degruise v. Sprint Corp*, 279 F.3d 333, 336 (5th Cir. 2002)
4  ("[E]mployers are required to operate in good faith compliance with a reasonable interpretation
5  of what adequate notice entails."); *Smith v. Rogers Galvanizing Co.*, 123 F.3d 1380, 1383-84
6  (10th Cir. 1997).  Thus, several courts have found that the statute does not require actual notice.
7  Instead, employers comply with § 1166(a) when they send COBRA notices by means reasonably
8  calculated to reach the recipient.  *See Crotty*, 455 F.3d at 830 (citing cases).

Plaintiff argues that constructive notice is not adequate where the employer knows that the employee never actually received the notice.  In support of this argument, Plaintiff cites *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223 (11th Cir. 2002).  There, the employer contracted with a third party to send the COBRA notice, but the employer failed to present any evidence indicating that the third party actually mailed the notice to the plaintiff.  The Eleventh Circuit held, "Simply hiring an agent and then instructing the agent to send notice is not sufficient to satisfy the statute, where there is no evidence that the agent sent out a notice to the plaintiff, nor any evidence that the principal took the steps necessary to ensure that the agent would, in all cases, make such notification."  *Id.* at 1231.

This case is easily distinguishable from *Scott*.  Here, on December 11, 2007, through a third party administrator, Sierra Nevada College, sent Plaintiff a notice of her rights under COBRA at her last known address.  Several courts have specifically found that employers comply with the statute when the send the notices via first class mail to the employee's last known address.  *See Torres-Negron v. Merck & Co.*, 488 F.3d at 45 (citing cases).  Although it is not clear whether Defendants mailed Plaintiff's notice via first class mail, it is nonetheless undisputed that Defendants mailed Plaintiff her COBRA notice to her last known address.  Under

///
///

---

[8]The Ninth Circuit has not addressed this issue.

1  these facts, the court finds that Defendants have met their burden, and the court will grant
2  summary judgment on this claim.
3      IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (#37)
4  is DENIED in part and GRANTED in part.
5      IT IS FURTHER ORDERED that Defendants' Motion to Supplement (#44) is DENIED.
6      IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (#45) is DENIED.
7      IT IS FURTHER ORDERED that the parties shall lodge their proposed joint pretrial
8  order within thirty (30) days from entry of this Order.  *See* Local Rules 16-4 and 26-1 (e)(5).
9      IT IS SO ORDERED.
10     DATED this 14th day of January, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE